IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Janine M. Adams, | ) | Civil Action No. 2:10-1658-RMG-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| U.S. Airways, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

This matter is before the Court on the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 29], requesting that the plaintiff's entire case be dismissed. The plaintiff has pled claims for disability discrimination under the Americans With Disabilities Act ("ADA"), race discrimination under Title VII of the Civil Rights Act of 1964 (as amended) ("Title VII") and 42 U.S.C. § 1981, and age discrimination under the Age Discrimination in Employment Act ("ADEA").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

The defendant employed the plaintiff at the Charleston Airport until she "was resigned from her position on April 14, 2008" after a three-year medical leave of absence. (Amended Compl. ¶¶ 16, 34, 70.) The plaintiff complains that she was

discriminated against in various ways based on her disability, perceived and real, and her age, including but not limited to, the following incidents.

On March 26, 2005 and April 6, 2005 the plaintiff was injured at work. *Id*. ¶ 23. 24. The plaintiff filed workers' compensation claims for each of the injuries. *Id*. ¶ 24. The defendant, however, allegedly denied each of the workers' compensation claims. *Id*. ¶ 25.

The plaintiff was placed on leave at the time of her accidents and the defendant was subsequently aware of her serious medical condition. *Id*. ¶¶ 28, 29. The plaintiff contends that she was released to return to work with some restrictions but that the defendant rejected her for an open administrative assistant position available "during [her] forced leave," and about which she expressed interest. *Id*. ¶¶ 31, 32, 33. The plaintiff also alleges that the defendant announced to coworkers that she was on drugs. *Id*. ¶ 26.

On February 9, 2009, the plaintiff submitted an Intake Questionnaire to the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that the defendant and the plaintiff's union discriminated against her during the course of her employment. (Def. Ex. 1.) Following receipt of the plaintiff's Intake Questionnaire, the EEOC sent a letter to the plaintiff on May 11, 2009, informing her that she had failed to meet the filing deadline and, therefore, that the EEOC had "no jurisdictional authority to process" her complaint. (Def. Ex. 2.)

More than five months later, on October 26, 2009, the plaintiff filed an EEOC

Charge of Discrimination with the EEOC (the "Charge"). (Def. Ex. 4.) In her Charge, the plaintiff asserted that she: (a) filed Workers' Compensation claims in 2003 and 2005; (b) was denied light duty positions; (c) was accused of having an affair with a coworker's husband and of being on drugs; (d) had her health insurance cancelled; and (e) retired from her position in April 2005. *Id*.

The plaintiff filed the instant action on February 2, 2010, and filed her Amended Complaint on August 26, 2010.

## APPLICABLE LAW

### MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007)).  Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)).

## DISCUSSION

The defendant first argues that the plaintiff's various claims should be dismissed because they were not filed within the statute of limitations period prescribed by the relevant employment statutes.  The defendant further contends that even to the extent there are such portions of the claims which are, in fact, timely, they still should be dismissed as beyond the scope of the Charge of Discrimination filed with the Equal Employment Opportunity Commission.  The defendant has advanced other grounds for dismissal, which the Court will not fully meet because the motion is resolved on the strength of these initial arguments.

The defendant has accurately recounted the law of exhaustion in employment discrimination cases.  Before filing suit under Title VII, the ADA or the ADEA, a plaintiff must first exhaust her administrative remedies by bringing a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 12117(a) (ADA)*; Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007) (Title VII); *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (Title VII); *Davis v. Virginia Commonwealth Univ.*, 180 F.3d 626, 628 n. 3 (4th Cir.1999) (ADA); *Fisher v. Securitas Sec. Serv. USA Inc.*, 2010 WL

568234, at *3 (D.S.C. Feb. 12, 2010) (Title VII and ADEA claims); *Strickland v. Baker*, 2010 WL 146816, at **3-4 (D.S.C. Jan. 11, 2010) (Title VII and ADA claims). Title VII, the ADEA and the ADA establish two possible limitation periods for filing a discrimination charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 12117(a) (ADA). The standard limitations period for filing a charge is 180 days after the alleged unlawful employment practice. *Id*. The limitations period is extended to 300 days, however, when state law proscribes the alleged employment practice and the charge has initially been filed with a state or local deferral agency. *See* 42 U.S.C. §2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B). Thus, when a plaintiff chooses to file her charge only with the EEOC and not with a state or local deferral agency, the charge must be filed within 180 days of the alleged unlawful employment practice. *See, e.g., Middleton v. Motley Rice, LLC*, 2010 WL 3167375, at *11, n.7 (D.S.C. May 4, 2010) (180-day filing period applied because plaintiff filed her charge only with the EEOC and not with the South Carolina Human Affairs Commission); *Keeshan v. Eau Claire Co-op. Health Ctrs., Inc.*, 2007 WL 2903962, at *4, n.2 (D.S.C. Oct. 2, 2007) (noting that plaintiff who chooses to file a charge only with the EEOC must do so within 180 days of the alleged discriminatory act). A plaintiff's failure to file a charge within the applicable limitations period bars a later lawsuit in federal court. *See McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court.")

5

The defendant contends that the 180-day limitation period applies, here, because the plaintiff did not first file with the South Carolina Human Affairs Commission ("SHAC"). The plaintiff filed an intake questionnaire with the EEOC on February 9, 2009, approximately 296 days after the date of the last alleged discriminatory act, on April 18, 2008.[1] (Def. Ex. 1.) The plaintiff did not file a separate charge or questionnaire with the SHAC, the South Carolina agency responsible for enforcing state and federal employment discrimination laws. As a result, the plaintiff would appear at first blush to have run afoul of the requirement that she first file her complaint with a state agency in order to qualify for the 300-day, rather than the 180-day, limitations period.[2] *See* 42 U.S.C § 2000e-5(e).

For purposes of the 300-day limitations period, however, "when the relevant state

---

[1] As a preliminary procedural matter, both parties have attached a copy of various EEOC documents to their submissions. Some of these documents were attached to the plaintiff's original state court Complaint. [Doc. 1, Attach. 1.] The general rule is that when matters outside the pleadings are presented to the court on a 12(b) motion, that motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Here, however, the parties have not contested recourse to any of these documents, and the Fourth Circuit Court of Appeals has held that "a court may consider [extrinsic evidence] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic v. Tricron Healthcare*, 367 F.3d 212, 234 (4th Cir.2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999) (internal quotation marks omitted)). Specifically in employment discrimination cases, district courts have considered EEOC filings without converting the motion to one for summary judgment. *See Edwards v. Murphy-Brown, L.L.C.*, 2011 WL 124209, at *23 n.3 (E.D. Va. Jan. 4, 2011).

[2] The Court has had some difficulty following the plaintiff's various responses to this argument. Respectfully, it is almost as if the plaintiff inadvertently submitted an unedited draft, for the presence of stray phrases, unfinished sentences and quotations, and even material which seems out of logical order or not to her benefit. (See Pl. Resp. at 1, 5, 6.) The Court is embarrassed and slow to make such observations because mistakes are easy and common to demanding legal work; but, in a case where dates are literally everything, the plaintiff has been less than attentive to reflecting them accurately. For example, she says that the letter from the defendant was dated April 15, 2009, not 2008, and then she later states that she was not informed until, April 18, 2010, instead of 2008 (See Pl. Ex. 1). (Pl. Brief at 1.) These sorts of oversights have made an already factually and technically cumbersome case all the more difficult to navigate.

agency has entered into a work sharing agreement with the EEOC and that agreement states that each agency will serve as the agent of the other for the purpose of receiving charges, it is well-settled law that a charge filed with the EEOC is 'constructively filed' with the state agency either on the same day that the charge was filed with the EEOC or on the day that the EEOC refers the complaint to the state agency." *Peterson v. State of Cal. Dept. of Corrections and Rehabilitation*, 319 Fed. Appx. 679, 680 (9th Cir. 2009) *(*quoting *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 112-113, 125 (1988) (holding that the 300-day federal limitations period applied to a claim that the plaintiff filed only with the EEOC 290 days after the discriminatory act, and stating that "[t]he EEOC's referral of a charge initially filed with the EEOC to the appropriate state or local agency properly institutes the agency's proceedings within the meaning of the Act"); *Puryear v. County of Roanoke*, 214 F.3d 514, 519 (4th Cir.2000)*; see also Griffin v. City of Dallas*, 26 F.3d 610, 611-13 (5th Cir.1994); *Hong v. Children's Memorial Hosp.*, 936 F.2d 967, 970-71 (7th Cir.1991); *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1474 (9th Cir.1989) (noting that, under the DFEH/EEOC work sharing agreement, "each agency [is] the agent of the other for the purpose of receiving charges").

Here, the EEOC and SHAC have entered into such an agreement, permitting the EEOC to investigate the charge first. (Def. Ex. 5.) Moreover, it appears that this District has traditionally assumed, without requiring proof, the existence of such a workshare agreement between South Carolina and the EEOC. *See Brown v. Berkeley County*

*School Dist.*, 339 F.Supp.2d 715, 721 n.3 (D.S.C.2004); *Grooms v. Mobay Chem. Corp.*, 861 F. Supp. 497, 503 & n. 7 (D.S.C.1991). Accordingly, the 300-day limitations period was implicated by virtue of any EEOC filing, pursuant to the operative worksharing agreement.

To the Court, therefore, the only question is whether the questionnaire, filed February 9, 2009, five months before the plaintiff's actual Charge, may be rightly considered as a charging document for purposes of satisfying the 300-day statute of limitations. If it cannot, then the plaintiff's subsequent Charge of Discrimination, not filed until October 26, 2009 [Def. Ex. 4], some 556 days after the last alleged date of discrimination, would be untimely.

The United States Supreme Court has held that for a questionnaire to be considered as a Charge it "must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). "[T]he filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Id*.

Concerning the present case, there is no particular and express request for action in the sense that the plaintiff somehow asked that the EEOC to institute a lawsuit or to take other specific measure. But, in boilerplate, the questionnaire explicitly states that "[w]hen this form constitutes **the only timely written statement** of allegations of

employment discrimination, the Commission will, consistent with 29 C.F.R. 1601.12(b) and 29 C.F.R. 1626.8(b), **consider it to be a sufficient charge of discrimination under the relevant statute(s)**." [Def. Ex. 1 at 6 (emphasis added).]; *see also Strickland v. Baker*, 2009 WL 5449223 (D.S.C. December 18, 2009). In *Holowecki*, the Supreme Court emphasized that it would extend a "measure of respect," to the determination that an "Intake Questionnaire" constituted a "charge," as a reasonable exercise of the EEOC's authority. *Holowecki*, 552 U.S. at 398.

And, to that point, the questionnaire here is exhaustive. [See Doc. 5.] It is 11 pages in length including 6-7 pages of narrative factual allegation, albeit with some repetition. As discussed, the questionnaire the plaintiff completed made appeal to Section 1626.8(b), which likewise borrows from 29 C.F.R. § 1626.6, which states, "A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing." 29 C.F.R. § 1626.6. 29 C.F.R. 1601.12, also cited in the questionnaire [Def. Ex. 1 at 6], makes similar demand. The plaintiff's questionnaire more than satisfies these requirements. The questionnaire not only identifies the defendant, but numerous specific employees of the defendant who allegedly engaged in discriminatory conduct; the dates and instances of such alleged conduct; accommodations requested; and the perceived basis for the discrimination. [Def. Ex. 1 at 1, 5, 7-11.] As far as the Court can tell, the statement is not sworn in the nature of an affidavit, as was the case in *Holowecki*, but in all other respects it is as complete and apprising as the Court might imagine, certainly to the extent expected of a charge under

the regulations and more than those at issue in other cases where courts have declined to consider a questionnaire as sufficient for a Charge. *See, e.g., King v. Lowe's Home Ctrs., Inc.*, 2009 WL 3681686, at **4-5 (D. Md. Nov.2, 2009) (finding that the plaintiff's Intake Questionnaire was not a Charge where it did "not contain such detailed information" and only contained the parties' contact information and some general facts regarding her claims); *Morrow v. Metropolitan Transit Auth.*, No., 2009 WL 1286208, at **5-6 (S.D.N.Y. May 8, 2009) (involving completed form and single attached paragraph).

Short of magical words, which surely cannot be the precise import of *Holowecki*, it does not seem possible to make it more plain that the plaintiff meant to invoke the investigative and remedial processes of the EEOC. The undersigned is aware that the Supreme Court, in *Holowecki*, was intentionally cautious to allow the EEOC the tools to differentiate between investigative and informational requests in such prescreening questionnaires. *See Holowecki*, 552 U.S. at 401. But, here, the plaintiff's submission does not speak in the language of mere information gathering or providing. And, as emphasized, the EEOC has expressed an intent, in the same document, to treat the questionnaire as a Charge where it represents the only timely filing, as it does here.

Notwithstanding this determination, it appears that the questionnaire still fails for untimeliness. Specifically, the 300-day period begins to run from the date of alleged unlawful employment practice.[3] *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing

---

[3] There can be no serious claim of a continuing violation because that doctrine is only applicable to a claim of hostile work environment, not pled in this case. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 120-22 (2002).

charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred."). All claims arising prior to April 15, 2008 (300 days before the February 9, 2009, the filing date of the questionnaire), therefore, would still be time barred. *See id.* Since the plaintiff's employment was terminated on April 14, 2008, the only claim asserted in the Amended Complaint that could possibly have arisen on or after April 15, 2008 is one related to her separation from the defendant, which she claims to have learned about for the first time on April 18, 2008.[4] So from a limitations perspective it is technically possible for any unlawful employment practice taken in regards to the plaintiff's resignation to be considered now. It is well established, however, that a plaintiff's subsequent lawsuit cannot exceed the scope of the administrative Charge.

The EEOC charge defines the scope of the plaintiff's right to institute a civil suit. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id*. (qouting *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir.1981)). When a claim raised in litigation exceeds the scope of the administrative charge, that claim is procedurally barred. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir.2005) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995)).

---

[4] The Court need not address when the cause actually arose. As will be discussed, whether April 14 or 18, the plaintiff did not include it in her questionnaire or her charge of discrimination and, therefore, it is beyond the scope of those documents such that it may not be entertained here.

Specifically, the Fourth Circuit has made "clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko*, 429 F.3d at 509.  For instance, a claim will "typically be barred if the administrative charge alleges one type of discrimination – such as discriminatory failure to promote-and the claim encompasses another type – such as discrimination in pay and benefits."  *Id*. (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963-64 (4th Cir.1996); *Lawson v. Burlington Indus., Inc.*, 683 F.2d 862, 863-64 (4th Cir.1982) (claim of discriminatory failure to rehire barred because charge only alleged illegal layoff)).

Here, even the most liberal construction of the charging documents, does not permit a conclusion that the plaintiff's resignation/termination somehow formed the basis of any allegation of discrimination in either the initial questionnaire or the later filed Charge. The completed questionnaire barely referenced her resignation, even as the form specifically invited the filing party to list the dates of any discriminatory acts.  (See Def. Ex. 1 at 2.)  The defendant submitted three pages of factual allegations, which did not in any respect characterize the plaintiff's separation from the defendant as the result of some unlawful act or practice, whether by resignation or termination.  *See id.*  Even her subsequent Charge of Discrimination says no more than, "I retired from my position in April 2005 [sic]."  (Def. Ex. 4.)  It does not contend that she was fired or that any termination of her employment was motivated by, or somehow otherwise related to, discrimination of any kind.  In fact, in her Charge, the plaintiff actually swears that the last date on which discrimination allegedly occurred was April 1, 2008, approximately two weeks before her separation. *Id*. at 1.

Instead, her charging documents include a variety of allegations about 2003 and

2005 workers' compensation claims; complaints of harassment for being out of work; an allegation that she was not treated similarly to others in regards to job openings; an allegation about a 2005 issue with the plaintiff's insurance coverage; an allegation that she was accused of stealing a watch in 1998; and an apparent complaint about incidents at a coworker's birthday party. (See Def. Ex. 1.) Whatever the quality of these claims, they are plainly distinct from, and not in the nature of, a discriminatory discharge claim, which any claim based on the plaintiff's April 2008 separation necessarily must be.

But, even the Amended Complaint hardly makes any attempt at a claim for wrongful termination. As far as the Court can tell, there is one generalized averment to that affect. (Amend. Compl. ¶ 76.) But, even that one averment bears no resemblance to the content of any of the charging documents,.

And, just to be clear, similar allegations to those in the charging documents certainly appear in the Amended Complaint but, as discussed, they are of the kind which fall outside of the 300-day window, to wit, arising prior to April 15, 2008. So, the only actionable incident, the plaintiff's separation, is a factual predicate, outside the scope of the charging documents. The Court does not believe that the conclusion is a reaching one. The plaintiff's questionnaire barely dips itself under the procedural bar and, even then, only as to a single incident, her separation, which is but a factual afterthought at best in the questionnaire. It would seem a strange result for that neglected claim to be allowed to blossom full bloom into a credible lawsuit now.

The defendant has also challenged whether on an individual basis the various claims in the Amended Complaint have been pled with sufficient specificity to meet the

demands of the pleading standard. Because the entire matter should be dismissed for other reasons, however, the Court need not precisely address it other than to say that the undersigned has reviewed the relative arguments and would not be inclined to recommend dismissal for any failure to plead the necessary elements of the included claims.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion to dismiss [Doc. 29], be GRANTED and all claims dismissed *with prejudice*.

IT IS SO RECOMMENDED.

                                                        s/Bruce Howe Hendricks
                                                        United States Magistrate Judge

March 16, 2011
Greenville, South Carolina.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).